## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| DIGITAL NETWORKS NORTH AMERICA, INC. | ) | Case No. 15-11535 (KG) |
| | ) | |
| Debtor. | ) | |
| GEORGE L. MILLER, solely in his capacity as the Chapter 7 Trustee of Digital Networks North America, Inc., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 17-50900 (KG) |
| | ) | |
| D&M HOLDINGS US INC., | ) | |
| | ) | |
| Defendant. | ) | **Re: Adv. D.I. Nos. 29 & 30** |

### MEMORANDUM OPINION

Pending before the Court is D&M Holdings US Inc.'s ("D&M") motion to dismiss (the "Motion") [Adv. D.I. 30] George L. Miller's, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Digital Networks North America, Inc. (the "Debtor"), complaint (the "Complaint"). Adv. D.I. 1. For the reasons stated herein, the Court grants in part and denies in part the Motion.

### JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). This adversary proceeding is a "core" proceeding under 28 U.S.C. § 157(b)(2)(F). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

This adversary proceeding stems from the Debtor's July 20, 2015 (the "Petition Date") voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). D.I. 1.[1] The Debtor's schedules [D.I. 2] and statement of financial affairs (the "SOFA") [D.I. 4] provide that D&M is the Debtor's parent corporation. The Debtor's Schedule F also shows that D&M has an unsecured, nonpriority claim of $108,324,790.64. D.I. 2 at p. 8.

On July 19, 2017, the Trustee filed this six-count Complaint, seeking to avoid preferential transfers pursuant to 11 U.S.C. § 547(b); to recover preferential transfers pursuant to 11 U.S.C. § 550; the turnover of estate property and debt owed pursuant to 11 U.S.C. § 542(a), (b), respectively; and declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.* and Bankruptcy Rule 7001(2). Adv. D.I. 1. More specifically, the Complaint seeks the avoidance and recovery of an amount not less than $616,737.45, "judgment in favor of the Trustee for the value of the Receivable[, as defined *infra*,] in the amount of at least $271,103[,]" and declaratory judgment "that (i) the Receivable is property of the Debtor's estate and (ii) the Receivable is not subject to offset under section 553 of the Bankruptcy Code against a claim against the Debtor's estate." Compl. ¶ 57. The Complaint shows several payments to or for the benefit of D&M within the preference period, i.e., July 20, 2014 to July 20, 2015 (the "Preference Period"). Among other things detailed in the Complaint, $76,897.31 are attributable to prepetition setoffs (the "Prepetition Setoffs")

---

[1] References to "D.I." refer to the main proceeding's docket (15-11535), and references to "Adv. D.I." refer to this proceeding's docket.

and $15,316.14 are attributable to payroll transfers (the "Payroll Transfers"). *See* Compl., Ex. A. at pp. 2–3.

D&M filed this Motion on May 1, 2018, primarily citing lack of notice and specificity within the Complaint as grounds for dismissal. *See generally* Adv. D.I. 30. The Trustee responded (the "Response") [Adv. D.I. 35] on June 6, 2018, and D&M replied (the "Reply") on July 11, 2018. Adv. D.I. 36. No oral argument was held, and the matter is ripe for review.[2]

## STANDARD OF REVIEW

"A Rule 12(b)(6) motion to dismiss serves to test the sufficiency of the allegations in the plaintiff's complaint." *In re Lexington Healthcare Grp., Inc.*, 363 B.R. 713, 715 (Bankr. D. Del. 2007) (citing *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993)). A claim must be dismissed if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); Bankruptcy Rule 7012(b). A complaint fails to state a claim upon which relief can be granted unless it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2); Bankruptcy Rule 7008. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is a context-specific task. *Id.* at 679. Courts in the Third Circuit apply a two-part test:

---

[2] The Court denies D&M's request for oral argument. Adv. D.I. 38 at p. 2; *see* Local Bankruptcy Rule 7007-3 (providing that oral argument in non-discovery-related adversary proceedings is at "the discretion of the Court").

> First, the factual and legal elements of a claim should be separated. The []
> Court must accept all of the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions. Second, a [] Court must then determine
> whether the facts alleged in the complaint are sufficient to show that the
> plaintiff has a plausible claim for relief.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11.[3] The Third Circuit has further instructed

that "[s]ome claims will demand relatively more factual detail to satisfy this standard,

while others require less. *In re Conex Holdings, LLC*, 518 B.R. 792, 800 (Bankr. D. Del. 2014)

(citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 361 (3d Cir.2010)). "'The issue is

not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims.'" *Lexington Healthcare*, 363 B.R. at 715 (citing *Scheuer v.

Rhodes*, 416 U.S. 232, 236 (1974)).

## **DISCUSSION**

### **Counts I and II: Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547(b)**

Counts One and Two both concern preferential transfers under Section 547(b). The

Court addresses each of the transfers in turn. D&M's "insider" status means that the

Preference Period is one-year, i.e., July 20, 2014 to July 20, 2015. *See* 11 U.S.C. § 547(b)(4)(B).

*A. The Prepetition Setoffs*

The first category of transfers in Count One are the Prepetition Setoffs, totaling

$76,897.31. Compl. ¶¶ 19–27, Ex. A. at pp. 3–5; *see* Motion at p. 5. Of the alleged

Prepetition Setoffs, $6,842.89 occurred prior to the Preference Period. *Id.*; *see* Compl., Ex.

---

[3] D&M's "insider" status, as defined by 11 U.S.C. § 101(31), does not affect this standard.

A at p. 3 (including transactions from July 3, 2014 to July 17, 2014). The Court therefore begins by reducing the alleged preference amount to $70,054.42.

D&M and the Trustee have obfuscated their disagreement over the permissibility of avoiding the Prepetition Setoffs under Section 547. D&M maintains that "[a] setoff [governed by Section 553] is not avoidable under section 547." Motion at p. 7; Reply at pp. 7–8. The Trustee, however, contends that D&M's position "is squarely inconsistent with this Court's prior guidance on [the issue]." Response at p. 6.

The Third Circuit has dicta remarking that "where a setoff right is being asserted, section 553, rather than section 547, governs the creditor's rights." *Lee v. Schweiker*, 739 F.2d 870, 873 n.4 (3d Cir. 1984). The Trustee draws the Court's attention to *Pardo v. Pacificare of Texas, Inc. (In re AFP Co.)*, 264 B.R. 344 (Bankr. D. Del. 2001), for the proposition that, "when a party asserts a section 553 defense to a preference action, the court must first determine whether the asserted setoff was valid under section 553. The Court then applies section 547 if it finds the setoff invalid or if it finds no right of setoff in bankruptcy." Response at p. 6. In *Pardo*, a trustee alleged invalid prepetition setoffs by a creditor and sought recovery pursuant to, among other sections, Sections 547(b) and 553(b). 264 B.R. at 356–57. Judge Walsh, writing for the Court, noted:

> [S]ection 553(a) recognizes and preserves rights of set off where four conditions exist: (1) the creditor holds a 'claim' against the debtor that arose before the commencement of the case; (2) the creditor owes a 'debt' to the debtor that also arose before the commencement of the case; (3) the claim and debt are 'mutual'; and (4) the claim and debt are each valid and enforceable.

*Id.* at 354 (citations omitted). The Court further noted that setoffs *can* be preferences and that "Section 553(b) protects an otherwise preferential setoff *excluding any insufficiency*." *Id.* at 357 (emphasis added). The Court highlighted that the proper procedure is to, as ironically advanced by the Trustee, (i) consider the validity of the underlying setoff pursuant to Section 553 and (ii) "appl[y] § 547 if [the court] finds the setoff invalid or if it finds no right of setoff in bankruptcy." *Id.*

D&M does not quarrel with *Pardo*'s reasoning (*see* Reply at p. 7) and argues:

> In general, a prepetition setoff is not avoidable as a preference under section 547 . . . . There are two exceptions to this general rule. A prepetition setoff may be avoidable as a preference . . . if the setoff was invalid under applicable nonbankruptcy law and thus not a 'setoff.' Similarly, a prepetition setoff may be invalid if the setoff does not qualify under the provisions of section 553(a)(2)(B) or 553(a)(3).

Reply at p. 7 (citing 5 *Collier on Bankruptcy* ¶ 553.09[1] (16th ed. 2018)).[4] Further, "Congress deliberately omitted setoffs from avoidance under section 547[,]" noting:

---

[4] Section 553(a)(2)(B), (a)(3) provide:

(a)Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

. . .

(2)such claim was transferred, by an entity other than the debtor, to such creditor—

    (B)

        (i) after 90 days before the date of the filing of the petition; and

        (ii) while the debtor was insolvent (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561); or

(3)the debt owed to the debtor by such creditor was incurred by such creditor—

    (A) after 90 days before the date of the filing of the petition;

    (B) while the debtor was insolvent; and

    (C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).

> At a minimum, a preference under section 547(b) requires a prepetition 'transfer' of an interest of the debtor in property. . . . The term 'transfer' is defined in [Bankruptcy] Code section 101, and the definition intentionally omits 'setoffs.' The legislative history to section 101 explains the omission in clear terms: 'Inclusion of 'setoff' is deleted. The effect is that a 'setoff' is not subject to being set aside as a preferential 'transfer' but will be subject to special rules.' Similarly, section 553 provides that 'this title,' i.e., title 11, does not affect setoff rights. Thus, setoff cannot be a preference or a fraudulent transfer.

*Id*. at pp. 7–8 (citations omitted).

The Trustee's Response addresses some of the concerns raised by D&M's Motion (*see* Response at pp. 6–7), but the Trustee makes a fatal flaw—he fails to adequately show that, as required by the Bankruptcy Code and associated case law, there was anything categorically impermissible about the Prepetition Setoffs that would warrant going *beyond* Section 553 and applying Section 547. This is particularly important in the case at bar because, unlike the trustee in *Pardo* (*see* 264 B.R. at 351), the Trustee failed to plead a Section 553 insufficiency claim. *See* Adv. D.I. 1. D&M contends, and the Court concurs, that "if the Trustee has any claim to avoid the alleged setoffs, his claim is under section 553, not section 547." Reply at p. 7.[5] Count One, with respect to the Prepetition Setoffs, is dismissed without prejudice.

---

[5] D&M further argues the Trustee's failure to assert a Section 553 insufficiency claim is because he "knew that he did not have a good faith basis to allege that D&M improved its position through the alleged setoffs." *Id*. at p. 8 (highlighting Section 553(b)(1)'s requirement that a plaintiff allege a setoff permitted a creditor to recover more than the creditor would have had the setoff not occurred).

*B. The Payroll Transfers*

The rest of Count One concerns the Payroll Transfers, totaling $15,316.14. Compl., Ex. A. at p. 2; *see also* D.I. 30 (showing a revised SOFA). D&M persists that the Trustee's preference claim is again inadequate. Motion at pp. 5, 8. The Court disagrees. The Trustee easily satisfies all but one of Section 547(b)'s requirements—that the transfers were made "for or on account of an antecedent debt owed by the debtor before such transfer was made[.]" 11 U.S.C. § 547(b)(2).

D&M's core argument is that the Complaint provides little insight as to what the Payroll Transfers were for, if they were made, how they were paid, etc. Motion at pp. 5, 8–9; Reply at pp. 4–6. The Payroll Transfers are listed on the Debtor's schedules instructing them to "List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. . . ." Compl., Ex. A at p. 2. Aside from the dates of the Payroll Transfers, there is no other information indicating the rationale for such payments. *See id.* The Trustee urges the Court to consider the Debtor's revised schedules [D.I. 30] which indicate that the same three payments were made for "payroll." Response at p. 6. While the updated SOFA is not expressly incorporated into the Complaint, the Court is nonetheless willing to consider it. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007) (highlighting, albeit in the securities context, that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Thus, the Prepetition Setoffs are immune from avoidance under Section 547, but the Payroll Transfers survive the Motion. The Motion as to Count One is granted in part and denied in part and survives with an alleged value of $15,316.14.

*C. The Expense Transfer*

Count Two concerns the avoidance of an intercompany interest expense, totaling $524,524.00 (the "Expense Transfer"). Compl. ¶¶ 28–37. According to the Debtor's pro forma 2015 federal tax return,[6] as argued by the Trustee, the Expense Transfer was made to the Debtor's "tax-affiliated" group during the 2014 calendar year to "pay the Debtor's share of its federal corporate tax expense. . . ." *Id*. ¶¶ 29, 16. D&M contends that the Expense Transfer portion of the Complaint is "[t]he most notable unsupported allegation[.]" Reply at p. 4. The Court disagrees. In order to survive the Motion, the Trustee must satisfy Section 547(b)'s requirements. More specifically, the Trustee must establish that:

---

[6] D&M stresses the root document is insufficient to allege a preference claim because it "raises more questions than it provides answers[.]" Reply at p. 5. Viewing all facts alleged in favor of the Trustee under the Rule 12(b)(6) standard, the Court believes it is too early in the litigation lifecycle to take issue with the Trustee's evidence.

(1) an interest of the Debtor[] was transferred;
(2) the transfer was made to or for the benefit of [a creditor];
(3) the transfer was because of an antecedent debt owed by the Debtor[] before the transfer was made;
(4) the Debtor[] w[as] insolvent at the time of the transfer;
(5) the transfer occurred within ninety days [or one year for insiders] before the bankruptcy petition was filed; and
(6) the transfer permitted [a creditor] to receive more than it would have received upon liquidation of the Debtor[] under the [Bankruptcy] Code.

*Pardo*, 264 B.R. at 357 (citations omitted). Although barebones, the Complaint meets this criteria: (i) the Complaint alleges that the Debtor paid the expense (¶¶ 29, 30–31), constituting an interest of the Debtor; (ii) the Complaint alleges that the Expense Transfer was to or for the benefit of a creditor (¶ 32), as the tax-affiliated group received the benefit; (iii) the Complaint alleges an antecedent debt (¶¶ 16, 32–33), as it was made for the purposes of satisfying outstanding federal taxes; (iv) the Complaint alleges insolvency based on the Debtor's schedules (¶¶ 17, 35);[7] (v) the Complaint alleges that the Expense Transfers occurred during the 2014 calendar year, i.e., during the Preference Period (¶¶ 29, 34);[8] and (vi) the Complaint alleges that D&M received the benefit (¶¶ 17, 36), as it was necessary to pay the federal taxes.[9] Motions to dismiss come at early stages in litigation. A Trustee cannot be expected to plead the level of specificity advanced by D&M. The Motion is therefore denied with respect to the Expense Transfer.

---

[7] D&M takes issue with the Trustee's insolvency analysis (*see* Motion at pp. 10–11), however, the Court finds no issue with inferring insolvency beyond 90 days on the basis of the Debtor's financials upon the Petition Date.

[8] To the extent that that any of the Expense Transfer is attributable to a date outside the Preference Period, it is unavoidable. *See* Motion at p. 10.

[9] The Court is satisfied that the factual scenario presented by the Trustee does not merely constitute "labels and conclusions[ or] a formulaic recitation of a cause of action's elements. . . ." *Bell Atl. Corp.*, 550 U.S. at 555.

The Court has now whittled the Trustee's claim under Counts One and Two to $557,858.14. The remaining claim consists of the $15,316.14 Payroll Transfers and the $542,542.00 Expense Transfer.

### Count III: Recovery of Preferential Transfers Pursuant to 11 U.S.C. § 550

The Trustee seeks to recover the Transfers avoided under Counts One and Two pursuant to Section 550 of the Bankruptcy Code. The disposition of Count Three is tied to the Court's rulings on Counts One and Two. *See Ritz Camera & Image, L.L.C. v. Canon U.S.A., Inc.* (*In re Ritz Camera & Image, L.L.C.*), No. 12-11868 (KG), 2014 WL 432192, at *3 (Bankr. D. Del. Feb. 4, 2014) ("Where a party's only basis for dismissing the complaint for recovery of payments under 11 U.S.C. § 550 is the dismissal of the underlying claim, it is proper to rule on the Section 550 claim in the same manner as the underlying claim."). The Motion on Count Three will be granted in part and denied in part consistent with the treatment afforded to Counts One and Two.

### Counts IV and V: Turnover of Estate Property Pursuant to 11 U.S.C. § 542(a) and Debt Owed Pursuant to 11 U.S.C. § 542(b)

Section 542(a) provides that

> an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Section 542(b) provides

> an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Importantly, "[a] properly pleaded complaint asserting a claim for turnover must allege an undisputed right to recover the claimed debt. Turnover is not appropriate where there is a legitimate dispute over ownership of the property." *In re Conex Holdings, LLC*, 518 B.R. 792, 801 (Bankr. D. Del. 2014) (citations omitted). D&M contends that Counts Four and Five should be dismissed because the Trustee has failed to allege that the Receivable (defined *infra*) is (i) undisputed property of the Debtor and (ii) unliquidated. Motion at pp. 6, 13–14; Reply at pp. 8–12.

The bulk of D&M's briefing concerns the calculation of the Receivable, which, as documented in the Complaint is *at least* $271,103.00. Compl. ¶ 45. The Trustee arrives at this figure by examining "[t]he Debtor's trial balance for the year ending March 31, 2016 [which] contains an account titled 'D&M US' with the amount of $271,103.00." *Id*. ¶ 43. From there, the Trustee examined the Debtor's pro forma 2015 federal tax return which shows that the Debtor "held 'trade notes and accounts receivable' in the amount of $283,909.00 at the beginning of 2015 and $283,528.00 at the end of 2015. Based upon information and belief, the 'trade notes and accounts receivable' figure in the pro forma 2015 federal tax return includes the amount owing from [D&M]." *Id*. ¶ 44. This process, "*inter alia*," leads the Trustee to "believ[e] (and therefore ave[r]) that [D&M] owed the Debtor at least $271,103.00." *Id*. ¶ 45.

The Trustee argues that "[t]he only issue before the Court is whether ample facts have been pled to permit the Trustee the opportunity to introduce evidence that the identified receivable is property of the Debtor's bankruptcy[.]" Response at p. 11.

Determining this means that the Court must decide if there exists a bona fide dispute and whether it is liquidated. *See In re Dow Corning Corp.*, 215 B.R. 346, 359 (Bankr. E.D. Mich.), *supplemented*, 215 B.R. 526 (Bankr. E.D. Mich. 1997) ("The accepted definition of a 'liquidated debt' is one that is readily ascertainable as to value. An 'undisputed debt' is one that is certain as to its legal validity."). The Court prefers to first consider if the Receivable is liquidated.

*A. Is the Receivable Liquidated?*

Liquidated, in relevant part, as defined in Black's Law Dictionary, means "(Of an amount or debt) settled or determined, esp[ecially] by agreement." The Court finds that the Complaint just satisfies this definition.

D&M argues that the Trustee wavers over the value on the face of the Complaint. *See* Reply at p. 9 (citing Compl. ¶ 45). While this may be somewhat true, it is not relevant for purposes of deciding a motion to dismiss. The relevant inquiry is not "did the Trustee determine the *exact* monetary value of the claim?" Rather, the relevant inquiry is "did the Trustee present plausible facts that would warrant allowing the claim to proceed?" Here, it is evident that the Trustee satisfies the requirement. D&M's limited citations do little to dissuade the Court, as the factual scenario presented in the case at bar is markedly different. For example, D&M stresses this Court's decision *In re Oakwood Homes Corp.*, 342 B.R. 59 (Bankr. D. Del. 2006). In *Oakwood*, the Court dismissed and found a Section 542 claim to be unliquidated for, among other reasons, the plaintiff's failure to allege *any* value. *Id.* at 68. Here, the Trustee asserts a value for his claim and does not ask the Court to make a finding. *See id.* at 68. Further, without commenting on the authenticity of the

Trustee's evidence, it is plausible to infer that a pro forma tax return—prepared by the Debtor—would not artificially create accounts attributable to D&M. Estimating the value of estate property early in the litigation process is difficult, and the Receivable is found to be sufficiently liquidated.

*B. Is the Receivable Disputed?*

"Where there is a legitimate dispute about the ownership of property a trustee seeks to recover, turnover under section 542 is not appropriate. A 'bona fide dispute' exists when there is a 'genuine issue of material fact that bears upon the . . . liability, or a meritorious contention as to the application of law to undisputed facts.'" *Lexington Healthcare*, 363 B.R. at 716 (internal citations omitted). "[T]he bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Id*. (citation omitted). Much like the Trustee at this stage, the Court is operating with a dearth of information. However, as presented, there is not a bona fide dispute as to the Receivable.

D&M's Motion and Reply strongly oppose the validity of the Receivable and instruct the Court to consider Judge Walrath's opinion in *In re Lexington Healthcare Grp., Inc*., 363 B.R. 713 (Bankr. D. Del. 2007). There, Judge Walrath found a bona fide dispute concerning the interpretation of a security deposit clause in a rejected lease. *Id*. at 716–17. Judge Walrath reached this conclusion after carefully considering the words of the underlying document. In particular, the Court found that "the Initial Lease is not so plain and unambiguous as to provide a clear, objective basis for concluding that the security deposit is property of the estate." *Id*. at 717. Here, however, the Court need not engage in

14

such analysis. The Trustee asserts that the Receivable is property of the estate based upon the Debtor's pro forma tax return. *See* Compl. ¶¶ 43–45. Finding no issue or need to engage in contractual interpretation, the Court finds *Lexington Healthcare* distinguishable.[10]

Based on the facts alleged in the Complaint and the inferences reasonably drawn therefrom, Counts Four and Five state claims upon which relief can be granted.

## Count VI: Declaratory Relief Pursuant to 28 U.S.C. § 2201 and Federal Rules of Bankruptcy Procedure 7001(2)

Section 2201 of Title 28 of the United States Code provides that

> any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Using this power, the Court dismisses Count Six without prejudice. Although a predicate of analyzing Counts Four and Five was determining that the Trustee established an undisputed right to the Receivable, the Court is not prepared to issue a declaratory judgment holding that the Receivable *is* property of the Debtor's Estate and immune from offset under Section 553. *See* Compl. ¶ 57. There is simply not enough information. Should the Trustee wish to include more information, the Court would be inclined to reconsider.

---

[10] D&M cites additional cases, such as *In re Conex Holdings, LLC*, 518 B.R. 792, 802–03 (Bankr. D. Del. 2014) (finding that, pursuant to Section 542, a trustee failed to allege an undisputed right to recover a receivable), to argue that the dispute is bona fide. Cases like *Conex*, however, miss the mark and are not directly applicable in the current dispute. The bulk of cases addressed by D&M involve complex contractual disputes. As stated above, that is not the case before the Court today. The Trustee's allegations stem from examining the Debtor's pro forma tax return—not an underlying contract between D&M and the Debtor.

**Leave to Amend**

The Trustee informally requests leave to amend if the "Court determines that additional facts must be pled[.]" Response at p. 13; *see* Fed. R. Civ. P. 15. D&M objects to the request, emphasizing that the period for the Trustee to freely amend has long lapsed and that D&M's eight stipulations extending the deadline to respond have "repeatedly" alerted the Trustee of "the fundamental defects in the Complaint[.]" Reply at p. 14. Although the Court notes the unusually slow process at-hand, leave to amend the Complaint will only be considered upon the filing of a formal motion.

**CONCLUSION**

The Court will grant in part and deny in part the Motion. An order giving effect to its ruling will follow.

Dated: August 13, 2018

KEVIN GROSS, U.S.B.J.